IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| THERESA SCHAPER<br>f/k/a Theresa Hopson<br>606 21st Street<br>Butner, NC 27509<br><br>         Plaintiff,<br><br>    v.<br><br>WOLFSPEED, INC.<br>4600 Silicon Drive<br>Durham, NC 27703<br><br>  c/o Melissa Garrett<br>  4600 Silicon Drive<br>  Durham, NC 27703<br><br>         Defendant | **AMENDED COMPLAINT FOR DAMAGES** |

Plaintiff, Theresa Schaper, by and through undersigned counsel, as her Complaint against Defendant, states and avers the following:

## PARTIES

1. Schaper is a resident of the town of Butner, county of Granville, state of North Carolina.

2. Wolfspeed, Inc. ("Wolfspeed") is a corporation incorporated in North Carolina with its headquarters located at 4600 Silicon Drive, Durham, NC 27703.

3. Wolfspeed was at all times hereinafter mentioned an employer within the meaning of 29 U.S.C. § 621 *et seq*.

## JURISDICTION & VENUE

4. Wolfspeed hires citizens of the state of North Carolina, contracts with companies in North Carolina, and owns or rents property in North Carolina. As such, the exercise of personal jurisdiction over Wolfspeed comports with due process.

5. Wolfspeed is incorporated in North Carolina, thereby conferring general jurisdiction over Wolfspeed.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1341 in that Schaper is alleging a Federal Law Claim under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq* ("ADEA").

7. Venue is proper in this District because the wrongs herein alleged occurred in this District.

## ADMINISTRATIVE PROCESS

8. Within 180 days of the conduct alleged below, Schaper filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 433-2024-01796 against Wolfspeed.

9. On or about November 25, 2024, the EEOC issued and mailed a Notice of Right to Sue letter to Schaper regarding the Charges of Discrimination brought by Schaper against Wolfspeed.

10. Schaper received her Right to Sue letter from the EEOC in accordance with 29 U.S.C. § 626(e) - which has been attached hereto as Plaintiff's Exhibit A.

11. Schaper has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

12. Schaper has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## ADEA COVERAGE

13. At all times referenced herein, Wolfspeed was an "employer" within the meaning of 29 U.S.C. § 630(b), in that it was engaged in an industry affecting commerce and had twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

14. At all times referenced herein, Schaper was an "employee" within the meaning of 29 U.S.C. § 630(f), in that she was an individual employed by an employer.

## FACTS

15. Schaper was employed by Wolfspeed.

16. At all times referenced herein, Schaper was over the age of 40.

17. Wolfspeed hired Schaper on or about December 1, 2013.

18. At the time of her hire, Schaper was 56 years old.

19. Wolfspeed originally hired Schaper as an Individual Contributor.

20. Schaper was promoted at various times until she became a Lab Manager in 2020.

21. As a Lab Manager, Schaper oversaw two of Wolfspeed's laboratories.

22. Schaper oversaw a laboratory in Fayetteville, Arkansas.

23. Schaper oversaw a laboratory in Durham, North Carolina.

24. Schaper was based in the Durham laboratory.

25. In March 2023, Schaper was delegated the duty of making the final hiring determination to fill an opening in the Fayetteville team.

26. One of the final candidates for the position was Terry Edwards.

27. At all times referenced herein, Edwards was over the age of 40.

28. The other final candidate was a younger individual who as related to a current team member.

29. During the hiring process, Kayla ("Kit") Midlam asked Schaper not to hire Edwards because she "didn't like old white men" (Midlam's Ageist Comment").

30. Midlam was a Failure Analysis Technician for Wolfspeed.

31. Midlam worked at Wolfspeed's Fayetteville location.

32. At all times referenced herein, Midlam was approximately 20-30 years old.

33. Midlam was substantially younger than Schaper.

34. Abby Wise also asked Schaper not to hire Edwards because she "didn't like old white men" (Wise's Ageist Comment").

35. Wise was a Failure Analysis Engineer III at Wolfspeed's Fayetteville location.

36. At all times referenced herein, Wise was approximately 20-30 years old.

37. Wise is substantially younger than Schaper.

38. After Midlam's Ageist Comment and Wise's Agest Comment, Schaper made a report of discrimination. ("Schaper's First Complaint of Age Discrimination")

39. Schaper made Schaper's First Complaint of of Age Discrimination to Donald Gajewski.

40. Gajewski was a Director for Wolfspeed.

41. Gajewski had the authority to hire, fire, or discipline employees.

42. Gajewski was Schaper's direct supervisor.

43. Schaper also made Schaper's First Report of Age Discrimination to Wolfspeed's Human Resources Department.

44. Schaper's First Complaint of Age Discrimination reported Wise's Ageist Comment and opposed discrimination against Edwards.

45. Schaper's First Complaint of Age Discrimination reported Midlam's Ageist Comment and opposed discrimination against Edwards.

4

46. At all times referenced herein, Defendants maintained a policy to investigate reports of unlawful discrimination and harassment ("Investigation Policy").

47. Pursuant to Defendants' Investigation Policy, an investigation of discrimination or harassment should include interviewing the complainant.

48. Pursuant to Defendants' Investigation Policy, an investigation of discrimination or harassment should include interviewing the subject of the complaint.

49. Pursuant to Defendants' Investigation Policy, an investigation of discrimination or harassment should include interviewing the subject of the reported discrimination or harassment.

50. Pursuant to Defendants' Investigation Policy, an investigation of discrimination or harassment should include interviewing witnesses to the reported discrimination or harassment.

51. Pursuant to Defendants' Investigation Policy, an investigation of discrimination or harassment should include getting a written statement from the complainant.

52. Pursuant to Defendants' Investigation Policy, an investigation of discrimination or harassment should include getting a written statement from the subject of the complaint.

53. Pursuant to Defendants' Investigation Policy, an investigation of discrimination or harassment should include getting a written statement from the subject of the reported discrimination.

54. In response to Schaper's First Complaint of Age Discrimination, Defendants did not interview Schaper.

55. In response to Schaper's First Complaint of Age Discrimination, Defendants did not interview Midlam.

56. In response to Schaper's First Complaint of Age Discrimination, Defendants did not interview Wise.

57. In response to Schaper's First Complaint of Age Discrimination, Defendants did not get a written statement from Schaper.

58. In response to Schaper's First Complaint of Age Discrimination, Defendants did not get a written statement from Midlam.

59. In response to Schaper's First Complaint of Age Discrimination, Defendants did not get a written statement from Wise.

60. In response to Schaper's First Complaint of Age Discrimination, Defendants did not get a written statement from anyone.

61. Defendants did not investigate Schaper's First Complaint of Age Discrimination at the time it was made.

62. By failing to take any action in response to Schaper's First Complaint of Age Discrimination, Defendants endorsed and condoned Midlam's conduct.

63. By failing to take any action in response to Schaper's First Complaint of Age Discrimination, Defendants endorsed and condoned Wise's conduct.

64. After Schaper's First Complaint of Age Discrimination, Midlam's and Wise's conduct did not change.

65. Schaper hired Edwards.

66. In June 2023, Schaper spoke to Edwards about his performance.

67. During the conversation, Edwards told Schaper that he believed the Fayetteville team did not like him because of his age ("Edwards' June Age Complaint").

68. The Fayetteville team included Joseph Payne, a Failure Analysis engineer, Midlam, and Wise.

69. Payne is substantially younger than Schaper and Edwards.

70. In or around June 2023, Schaper reported Edwards's June Age Complaint to Wolfspeed's Human Resources Department and Gajewski. ("Schaper's Second Complaint of Age Discrimination").

71. In response to Schaper's Second Complaint of Age Discrimination, Defendants did not interview Schaper.

72. In response to Schaper's Second Complaint of Age Discrimination, Defendants did not interview Edwards.

73. In response to Schaper's Second Complaint of Age Discrimination, Defendants did not get a written statement from Schaper.

74. In response to Schaper's Second Complaint of Age Discrimination, Defendants did not get a written statement from Edwards.

75. In response to Schaper's Second Complaint of Age Discrimination, Defendants did not get a written statement from anyone.

76. Defendants did not investigate Schaper's Second Complaint of Age Discrimination at the time it was made.

77. By failing to take any action in response to Schaper's Second Complaint of Age Discrimination, Defendants endorsed and condoned the discrimination Edwards suffered.

78. On or about September 22, 2023, Schaper learned that a complaint had been filed against Edwards for sexual harassment.

79. Gajewski was also informed of the complaint against Edwards.

80. On or about September 27, 2023, Schaper visited the Fayetteville lab.

81. The purpose of Schaper's visit was to address the tension between the Fayetteville team members.

82. Schaper gave a presentation to the Fayetteville team regarding professionalism and communication.

83. After the presentation, Wise told Schaper that she had submitted the complaint against Edwards.

84. After the presentation, Schaper talked more with Wise about her complaint against Edwards.

85. While talking with Wise, Wise admitted to Schaper that Edwards stares at everyone and not just female employees.

86. Upon information and belief, Wise does not make false reports about younger employees.

87. Wise created a false report about Edwards because of his age.

88. Wolfspeed investigated Wise's report of discrimination.

89. Wolfspeed did not investigate Schaper's First Complaint of Discrimination.

90. Wolfspeed's policy regarding complaints of discrimination was unevenly applied between employees aged 20-30 and employees aged over 40.

91. Wolfspeed investigated Wise's report of discrimination but not Schaper's report of discrimination because of Wolfspeed's discrimination against older employees.

92. After the presentation, Payne demonstrated anger and directed it at Schaper.

93. Upon information and belief, Payne does not direct his temper at other, younger employees.

94. Payne directed his temper to Schaper because of her age.

95. Schaper reported to Gajewski that Wise had gone back on her report and Payne's ageism.

96. Schaper reminded Gajewski about Midlam's Ageist Comment and Wise's Ageist Comment.

97. Schaper told Gajewski that she believed Edwards was being discriminated against on the basis of his age, and that Schaper was being discriminated against on the basis of her age. ("Schaper's Third Complaint of Age Discrimination")

98. In response to Schaper's Third Complaint of Age Discrimination, Defendants did not interview Schaper.

99. In response to Schaper's Third Complaint of Age Discrimination, Defendants did not interview Edwards.

100. In response to Schaper's Third Complaint of Age Discrimination, Defendants did not get a written statement from Schaper.

101. In response to Schaper's Third Complaint of Age Discrimination, Defendants did not get a written statement from Edwards.

102. In response to Schaper's Third Complaint of Age Discrimination, Defendants did not get a written statement from Wise.

103. In response to Schaper's Third Complaint of Age Discrimination, Defendants did not get a written statement from anyone.

104. Defendants did not investigate Schaper's Third Complaint of Age Discrimination at the time it was made.

105. By failing to take any action in response to Schaper's Third Complaint of Age Discrimination, Defendants endorsed and condoned the discrimination Edwards suffered.

106. By investigating Wise's complaints of discrimination and not Schaper's complaints of discrimination, Wolfspeed treated Schaper differently than younger individuals.

107. Wolfspeed investigated Wise's complaints of discrimination and not Schaper's complaints of discrimination on the basis of Schaper's age.

108. On or about November 30, 2023, Human Resources Representative Lauren Winston and Gajewski met with Schaper.

109. The purpose of the meeting was to discuss a complaint that had been filed against Schaper.

110. The complaint against Schaper was purportedly due to refusing to promote someone in retaliation for the complaint against Edwards.

111. The purported decision for Schaper's refusal to promote occurred before the complaint against Edwards.

112. During the meeting, Winston informed Schaper that the complaint had been filed by Wise.

113. Schaper reminded Winston of Wise's Ageist Comment.

114. Schaper stated that she believed that Wise's dislike of "old white men" extended to older white women, including herself. ("Schaper's Fourth Complaint of Age Discrimination").

115. In response to Schaper's Fourth Complaint of Age Discrimination, Defendants did not interview Schaper.

116. In response to Schaper's Fourth Complaint of Age Discrimination, Defendants did not interview Edwards.

117. In response to Schaper's Fourth Complaint of Age Discrimination, Defendants did not get a written statement from Schaper.

118. In response to Schaper's Fourth Complaint of Age Discrimination, Defendants did not get a written statement from Wise.

119. In response to Schaper's Fourth Complaint of Age Discrimination, Defendants did not get a written statement from anyone.

120. Defendants did not investigate Schaper's Fourth Complaint of Age Discrimination at the time it was made.

121. By failing to take any action in response to Schaper's Fourth Complaint of Age Discrimination, Defendants endorsed and condoned the discrimination Schaper suffered.

122. During the meeting, Winston stated that the facts did not matter, but Wise's feelings did.

123. Schaper's feelings were not taken into account for any of her three prior complaints when reporting discrimination.

124. Wolfspeed took Wise's feelings into account but not Schaper's feelings because Schaper is substantially older than Wise.

125. Following the meeting, on or about November 30, 2023, Schaper sent an email to Winston and Gajewski.

126. The email reiterated her concerns that she was being subjected to age discrimination. ("Schaper's Fifth Complaint of Age Discrimination").

127. In response to Schaper's Fifth Complaint of Age Discrimination, Defendants did not interview Schaper.

128. In response to Schaper's Fifth Complaint of Age Discrimination, Defendants did not interview Edwards.

129. In response to Schaper's Fifth Complaint of Age Discrimination, Defendants did not get a written statement from Schaper.

130. In response to Schaper's Fifth Complaint of Age Discrimination, Defendants did not get a written statement from Wise.

131. In response to Schaper's Fifth Complaint of Age Discrimination, Defendants did not get a written statement from anyone.

132. Defendants did not investigate Schaper's Fifth Complaint of Age Discrimination at the time it was made.

133. By failing to take any action in response to Schaper's Fifth Complaint of Age Discrimination, Defendants endorsed and condoned the discrimination Schaper suffered.

134. On or about December 1, 2023, Gajewski and Winston called Schaper for a meeting.

135. During the meeting, Gajewski informed Schaper that her employment was terminated.

136. Gajewski terminated Schaper the day after Schaper's fourth and fifth complaints of age discrimination.

137. Wolfspeed's termination of Schaper's employment was an adverse action.

138. Wolfspeed's termination of Schaper's employment was an adverse employment action.

139. Upon information and belief, Wolfspeed replaced Schaper with an individual under the age of forty.

140. Wolfspeed terminated Schaper's employment because of her age.

141. Wolfspeed terminated Schaper's employment in retaliation for her First Complaint of Age Discrimination.

142. Wolfspeed terminated Schaper's employment in retaliation for her Second Complaint of Age Discrimination.

143. Wolfspeed terminated Schaper's employment in retaliation for her Third Complaint of Age Discrimination.

144. Wolfspeed terminated Schaper's employment in retaliation for her Fourth Complaint of Age Discrimination.

145. Wolfspeed terminated Schaper's employment in retaliation for her Fifth Complaint of Age Discrimination.

146. As a direct and proximate result of Wolfspeed's conduct, Schaper suffered and will continue to suffer damages.

## COUNT I: <u>AGE DISCRIMINATION IN VIOLATION OF THE ADEA</u>

147. Schaper restates each and every paragraph of this complaint as if it were fully restated herein.

148. Pursuant to 29 U.S.C. § 623(a), it is an unlawful employment practice for an employer to discriminate against an employee "because of such individual's age."

149. At the time of Schaper's termination, Schaper was 66 years of age.

150. For the entirety of her employment with Wolfspeed, Schaper was fully qualified for her position.

151. Wolfspeed treated Schaper differently than other similarly situated employees who were outside the protected class.

152. By continually refusing to investigate Schaper's complaints of discrimination but investigating the complaints of younger employees such as Wise and Midlam, Wolfspeed engaged in a pattern of discriminatory conduct against Schaper on the basis of Schaper's age.

153. Upon information and belief, neither Wise nor Midlam were terminated from Wolfspeed.

154. Neither Wise nor Midlam were terminated from Wolfspeed because of their respective ages.

155. Wolfspeed terminated Schaper's employment on or about December 1, 2023.

156. After terminating Schaper, upon information and belief, Wolfspeed replaced Schaper with a person who was significantly younger and/or did not belong to the protected class under the ADEA.

157. Wolfspeed violated the ADEA by discriminating against Schaper based on her age.

158. In its discriminatory actions as alleged above, Wolfspeed acted with malice or reckless indifference to the rights of Schaper, thereby entitling Schaper to an award of punitive damages.

159. To remedy the violations of Schaper's rights, secured by 29 U.S.C. § 621 *et seq.*, Schaper requests that the Court award her the relief prayed for below.

### COUNT II: <u>RETALIATION IN VIOLATION OF THE ADEA</u>

13

Case 1:25-cv-00130-CCE-JEP    Document 12    Filed 05/09/25    Page 13 of 16

160. Schaper restates each and every paragraph of this complaint as if it were fully restated herein.

161. Pursuant to 29 U.S.C. § 623(d), "It shall be unlawful for an employer to discriminate against any of his employees…because such individual…has opposed any practice made unlawful by this section."

162. Schaper's First Complaint of Age Discrimination was made in or around March 2023.

163. Schaper's Second Complaint of Age Discrimination was made in or around June 2023.

164. Schaper's Third Complaint of Age Discrimination was made in or around September 2023.

165. Schaper's Fourth Complaint of Age Discrimination was made in or around November 2023.

166. Schaper's Fifth Complaint of Age Discrimination was made in or around November 2023.

167. On December 1, 2023, Gajewski informed Schaper that she was terminated.

168. Wolfspeed terminated Schaper in retaliation for opposing discrimination.

169. By continually refusing to investigate Schaper's complaints of discrimination but investigating the complaints of younger employees such as Wise and Midlam, Wolfspeed engaged in a pattern of discriminatory conduct against Schaper on the basis of Schaper's age.

170. In its discriminatory actions as alleged above, Wolfspeed acted with malice or reckless indifference to the rights of Schaper, thereby entitling Schaper to an award of punitive damages.

171. As a direct and proximate result of Wolfspeed's conduct, Schaper suffered and will continue to suffer damages.

**DEMAND FOR RELIEF**

WHEREFORE, Theresa Schaper demands the following:

(a) An award against Defendant of compensatory and monetary damages to compensate Schaper for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $ 25,000 per claim to be proven at trial;

(b) An award of punitive damages against Defendant in an amount in excess of $25,000;

(c) An award of reasonable attorneys' fees and non-taxable costs for Schaper's claims as allowable under law;

(d) An award of the taxable costs of this action; and

(e) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ *Evan G. Gungor, Esq.*
Evan Gungor (60902)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
5540 Centerview Drive
Suite 200B
Raleigh, NC 27606
Phone: (980) 332-4688
Fax:     (216) 291-5744
Email: evan.gungor@spitzlawfirm.com

*Attorneys For Plaintiff*
*Theresa Schaper*

## JURY DEMAND

Plaintiff Theresa Schaper demands a trial by jury by the maximum number of jurors permitted.

/s/ *Evan Gungor*
Evan G. Gungor, Esq. (60902)