IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| THERESA SCHAPER, | ) | CASE NO: 1:25-CV-130 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **PLAINTIFF'S BRIEF IN** |
| v. | ) | **OPPOSITION TO** |
| | ) | **DEFENDANT'S MOTION TO** |
| WOLFSPEED, INC.. | ) | **DISMISS** |
| | ) | |
| Defendant. | ) | |

## I. INTRODUCTION

Defendant's Motion to Dismiss is a premature attempt to argue the disputed facts of the case, in hopes that the Court will improperly view the case in a light most favorable to Defendant before the parties can even conduct discovery. In so arguing, Defendant's position falls woefully short. Indeed, Defendant's Motion to Dismiss fails because Plaintiff Theresa Schaper has sufficiently pled that she was wrongfully terminated based on discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"). Moreover, because Schaper's claims are based on her termination, she is not required to allege *specific* details about a particular individual who replaced her—in fact, such a standard would render it impossible for most ex-employees to bring a wrongful termination claims because most of the time, the identity of a "replacement" is not even fully known or produced until the discovery process. Here, Defendant improperly argues that this Court should apply a pleading standard set for a failure-to-hire case, rather than the applicable discrimination and retaliation standards. For these reasons alone, Defendant's Motion should be denied.

Schaper's allegations, taken as true, satisfy the basic pleading standard under Rule 12(b)(6) and meet the elements of both her discrimination claim and her retaliation claims. Schaper's

Amended Complaint clearly alleges disparate treatment between herself and individuals who are at least twenty years younger and as much as thirty years younger than her. The requirements to plead retaliation based on Schaper's fourth and fifth complaints of discrimination are clearly met by the temporal proximity between her protected activity and her termination. Schaper has alleged a consistent chain of discriminatory actions since her first report of discrimination that supports a causal relationship between even her earliest reports of discrimination and Defendant's termination of Schaper's employment. The Fourth Circuit has long cautioned courts that at the 12(b)(6) stage that a defendant employer's pretextual reason should not be used to prematurely dispose of a discrimination plaintiff's claim. Therefore, this Honorable Court should deny Defendant's Motion to Dismiss in its entirety.

## II. STATEMENT OF FACTS

Defendant hired Schaper in early December, 2013 as an Individual Contributor. Dkt. 12 ¶¶ 17-19. At the time of her hire, Schaper was 56 years old. Dkt. 12 ¶¶ 18. Defendant promoted Schaper at various times until she became a Lab Manager in 2020. Dkt. 12 ¶ 20. By 2023, Schaper was sixty five years old. See Dkt. 12 ¶ 18. In 2023, Schaper was left in charge of a hiring decision about an opening for the Fayetteville Team that she was a part of. Dkt. 12 ¶¶ 21-25. The two final candidates were Terry Edwards, who was over forty years old, and a younger individual who was related to another current team member. Dkt. 12 ¶¶ 26-28. Among Schaper's current team members were Kit Midlam and Abby Wise. Dkt. 12 ¶¶ 25, 30-31, 35. During the hiring process which occurred in March 2023, Midlam and Wise each expressed that they "didn't like old white men." Dkt. 12 ¶¶ 29, 34. Midlam and Wise each were in their twenties to thirties at the time, making them approximately twenty to thirty years younger than Schaper. Dkt. 12 ¶¶ 18, 32, 36.

After hearing Midlam and Wise make their respective comments, Schaper reported them to Donald Gajewski, a Director for Defendant and Schaper's direct supervisor, for age

discrimination in the workplace. ("First Report of Age Discrimination") Dkt. 12 ¶¶ 38-42. Schaper also made her First Report of Age Discrimination to Defendant's Human Resources Department ("HR"). Dkt. 12 ¶ 34. Schaper's First Report of Age Discrimination opposed discrimination against Edwards. Dkt. 12 ¶¶ 44-45. Despite having a policy to investigate reports of discrimination, Defendant failed to interview any witnesses, failed to get any written statements from witnesses, failed to investigate further, and instead refused to investigate Schaper's First Report of Age Discrimination. Dkt. 12 ¶¶ 46-61. Schaper hired Edwards. Dkt. 12 ¶ 65.

In or around June of 2023, Edwards expressed to Schaper that he felt targeted on the basis of his age. Dkt. 12 ¶¶ 66-67. Schaper reported Edwards' complaint to Gajewski and Defendant's HR shortly after that conversation.("Second Report of Age Discrimination") Dkt. 12 ¶ 70. Defendant failed to investigate Schaper's Second Report of Age Discrimination in the same way that it failed to investigate Schaper's First Report of Age Discrimination. Dkt. 12 ¶¶ 71-76. On or about September 22, 2023, Schaper was informed about a sexual harassment complaint against Edwards as a result of Defendant's investigation. Dkt. 12 ¶¶ 78, 88. When talking to her team to resolve tensions within the team on or about September 27, 2023, Schaper discovered that Wise had submitted the sexual harassment complaint. Dkt. 12 ¶¶ 80-81, 83. Schaper further discovered that Wise's complaint was false, as it had been based on Edwards staring at females despite Wise's admission that Edwards stared at males and females. Dkt. 12 ¶¶ 85-87.

In a separate conversation after Schaper's presentation, Joseph Payne, a Failure Analysis engineer who is substantially younger than Schaper, Payne became upset and directed his temper at Schaper. Dkt. 12 ¶¶ 68-69, 92. Payne did not direct his anger at younger employees, and decided to take out his anger on Schaper because of her age. Dkt. 12 ¶¶ 92-94. After Schaper's conversations with Payne and Wise, Schaper reported the discriminatory conduct displayed by

3

Wise and Payne against the older employees to Gajewski and HR. ("Third Report of Discrimination"). Dkt. 12 ¶¶ 95-97. Just as before, Defendant refused to investigate Schaper's Third Report of Discrimination. Dkt. 12 ¶¶ 98-104. Defendant was investigating the reports of discrimination from the people in their twenties and thirties, but refused to do so for employees over forty, including Schaper who was over sixty. Dkt. 12 ¶¶ 90-91.

On or about November 30, 2023, Gajewski and a HR representative, Lauren Winston, met with Schaper to discuss a complaint filed against her for a purported retaliatory failure to promote Wise. Dkt. 12 ¶¶ 108-110, 112. The decision at issue had occurred before Schaper became aware of any complaint against Edwards. Dkt. 12 ¶ 111. After hearing that Wise filed the complaint against Schaper, Schaper stated that she believed Wise's dislike of "old white men" extended to older white women such as herself as well. ("Schaper's Fourth Report of Discrimination") Dkt. 12 ¶ 114. Schaper reminded Defendant about Wise's ageist comments. Dkt. 12 ¶ 113. Despite this, Winston disregarded the fact that Schaper could not have retaliated for an act she did not yet know about and told Schaper that Wise's feelings were what mattered. Dkt. 12 ¶ 122. On November 30, 2023, two days after the complaint meeting, Schaper re-iterated her complaints in an email to Winston and Gajewski. ("Fifth Report of Discrimination"). Dkt. 12 ¶ 125. Defendant failed to investigate either of Schaper's fourth or fifth reports of discrimination. Dkt. 12 ¶¶ 115-120, 127-131. Defendant terminated Schaper one day after her Fifth Report of Discrimination. Dkt. 12 ¶ 134. Upon information and belief, Defendant replaced Schaper with someone who is under forty years old. Dkt. 12 ¶ 139.

### III. LEGAL STANDARD

#### A. Motion To Dismiss Standard.

To survive a 12(b)(6) motion, a complaint need only state a plausible claim for relief by pleading factual content that allows the court to draw the reasonable inference that the defendant

4

is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 663, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 554,556 (2007)). A complaint need not contain detailed factual recitations, but must provide the defendant "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. A 12(b)(6) motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hopper v. State of North Carolina, et. al.*, 379 F.Supp.2d 804, 811 (N.C.M.D 2005) (*citing Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). In considering a motion to dismiss, the court must construe all allegations in favor of the plaintiff. *See Mylan Labs. Inc. v. Matkari,* 7 F.3d 1130. 1134 (4th Cir. 1993).

**B. The Court Should Not Consider The Exhibit Attached To Defendant's Motion To Dismiss Or Any Matter "Outside Of The Pleadings."**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). Courts are limited to considering the sufficiency of the allegations set forth in the complaint and the "documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co.,* 637 F.3d 435, 448. Consideration of extrinsic documents by a court during the pleading stage of litigation improperly converts the motion to dismiss into a motion for summary judgment. *Id.* at 448.

Under Rule 12(d), if matters "outside the pleadings are presented to and not excluded by the court [for a Rule 12(b)(6) motion], the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). It is not appropriate for a court to convert a motion to dismiss into a motion for summary judgment "when the parties have not had an opportunity to conduct reasonable discovery." *Halscott Megaro, P.A. v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023)

(quoting *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015)); *see also* Fed. R. Civ. P. 12(b), 12(d), and 56. Courts instead focus their inquiry on the sufficiency of the facts relied upon by the plaintiffs in the complaint. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). Consideration of a document attached to a motion to dismiss ordinarily is permitted only when the document is "integral to and explicitly relied on in the complaint," and when "the plaintiffs do not challenge [the document's] authenticity." *Id.* (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir.1999)).

Here, Schaper does not rely on, quote, or reference the content of Schaper's Charge with the EEOC in her complaint. Rather, the relevance that Schaper's Charge has to her complaint is purely procedural allegations such that its relevance is limited to the procedure. The content of Schaper's charge is irrelevant beyond the extent to which Schaper has used it to exhaust her administrative remedies. Since Defendant's Motion does not bear on the exhaustion of administrative remedies, the content of her Charge should not be considered on Defendant's Motion to Dismiss. Further, Defendant includes a note that does not appear anywhere in either Schaper's Complaint or in Schaper's Charge and should not be considered for similar reasons.[1]

## IV. ARGUMENT

### A. Schaper's Amended Complaint Plausibly States A Claim For Age Discrimination Under The ADEA.

The ADEA prohibits an employer from discharging "or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To qualify for ADEA protections, an

---

[1] To the extent that Defendant's Memorandum of Law purports to clarify Midlam's identity, its commentary is beside the point and is a backhanded attempt to portray Schaper in a negative light with facts beyond the scope of her Amended Complaint. Schaper was supportive of Midlam's identity and even encouraged Midlam to send an announcement to their team to respect Midlam's desires. In Schaper's last discussions with Midlam on topic, they indicated that they had decided not to disclose their identity and asked Schaper to not use different pronouns in the workplace. Schaper's pleadings have been in accordance with that understanding.

6

individual must be "at least 40 years of age." 29 U.S.C. § 631(a). Age must be the "but-for" cause of the employer's action for the action to violate the ADEA. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009).

        i.      **Schaper Plausibly Pled A *Prima Facie* Case For Her ADEA Claim.**

Although not required, *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514-15 (2002), a plaintiff can satisfy her pleading standard by pleading facts showing that (1) she is a member of a protected class—that is, forty years or older; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or she was replaced by a substantially younger person. *Hartman v. University of Md. at Balt.*, 595 Fed. Appx. 179, 181 (4th Cir. 2014)(*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); see also *Buchhagen v. ICF Int'l, Inc.*, 545 Fed. Appx. 217, 220 (4th Cir. 2013) (concluding that a "complaint sufficiently allege[d] unlawful age discrimination" where it "allege[d] that [the plaintiff] is a member of a protected class (she was 67 when she was fired); that she suffered an adverse employment action (termination); and that she was replaced by a "substantially younger employee" and also contained factual "allegations of disparate treatment and pretext"). The elements should remain flexible and be viewed on a case-by-case basis. *McDonnell Douglas*, 411 U.S. 792, 802 n. 13. Establishing a prima facie case is not meant to be onerous. *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Here, Schaper alleged that she was over 40 years old. She states as much explicitly in her Amended Complaint and further included that at the time of her hire in 2015 she was fifty-six years old. The relevant events occurring in 2023 lead to the natural conclusion that at all relevant points, Schaper was over sixty years old. Schaper has alleged that she was a member of a protected class.

7

Second, Schaper suffered from an adverse employment action. An adverse employment action includes "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). Defendant terminated Schaper from her employment. Schaper suffered an adverse employment action.

Third, Schaper pled that her job performance was satisfactory. At the pleading stage, in order for a plaintiff's job performance to have been satisfactory, she must have alleged that she was qualified for the job, and that she was meeting her employer's legitimate job expectations. *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 514 (4th Cir. 2006). Generally, the fact that a person was hired indicates that they have the basic qualifications for the job, in terms of degrees, certificates, skills, and experience. *Warch,* 435 F.3d at 515, (*citing Loeb v. Textron, Inc.*, 600 F.2d 1003, 1013 n.10 (1st Cir. 1979). Courts will also consider whether a person continues to be qualified by continuing to meet legitimate employer expectations. *Warch*, 435 F.3d at 515.

The Fourth Circuit has strongly advised courts not to apply a defendant's proffered reason for termination as attacking the qualification element. "Whether the [defendant]'s nondiscriminatory explanation . . . is in fact pretext is a question to be analyzed under the long-familiar shifting burdens regime of *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and not under Rule 12(b)(6)." *Woods v. City of Greensboro*, 855 F.3d 639, 649 (4th Cir. 2017). However, a court must still be satisfied that the City's explanation for [the discriminatory action] does not render [plaintiff's] allegations implausible. *Woods*, 855 F,3d 639, 649 (4th Cir. 2017). The question is not whether there are more likely explanations . . . but whether the [defendant's] impliedly proffered reason . . . is so obviously and irrefutably sound and

8

unambiguously nondiscriminatory and non-pretextual explanation that it renders [plaintiff's] claim of pretext implausible. *Id.* (*citing Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015) (criticizing substitution of a probability standard for plausibility standard)).

Here, Schaper has alleged that she was qualified for the position by virtue of her hire. Further, Schaper continued to be qualified by virtue of the various promotions that she received until she became a Lab Manager in 2020. Her hire and continued promotions over such a long period of time demonstrates that it unlikely that any true work performance issue existed. The only statement to the contrary contained on the face of Schaper's Amended Complaint relates to Defendant's purported reason for terminating Schaper's employment, which the Fourth Circuit has cautioned against using against to dismiss Schaper's claims. Further, Schaper has alleged serious credibility issues as to the reason that Defendants proffer for terminating Schaper's employment. The alleged complaint of retaliation against Schaper could not be true. Schaper was not aware of the report of discrimination that Schaper was accused of retaliating against until after the decision not to promote was made. Further, the individual reporting Schaper has repeatedly demonstrated discriminatory animus against older workers from her statements and conduct, going so far as to create a false report against Edwards. Defendant was explicitly aware of the issues with the credibility of the complaint against Schaper as a result of Schaper's Fourth Complaint of Discrimination and Fifth Complaint of Discrimination. There are no other issues raised in Schaper's Amended Complaint that bear on the reason for her termination. Schaper has properly alleged that she was qualified for her position.

Fourth, Schaper has alleged that she was replaced by a substantially younger employee. Schaper has alleged that she was 56 at the time of her hire in 2013, that she was terminated in 2023 which makes her over sixty at the time of her termination, and that she was replaced by someone

9

who was under forty years old. These allegations in combination clearly show a minimum twenty year difference between Schaper and her successor. Indeed, Schaper's allegations establish an twenty year-plus age gap between the two, which is clearly "substantially younger" and is sufficient to support an age discrimination claim. Further information about who truly replaced Schaper is only going to be accessible to Schaper after further discovery. Schaper has plausibly alleged that she was replaced by a substantially younger employee.

Further, there are substantial additional allegations that demonstrate that the basis for Schaper's termination was based on her age. Schaper has alleged circumstances indicating that the true reason for her termination were based on age by alleging disparate treatment between how Defendant treated her reports of discrimination and how it treated Wise's reports of discrimination. While Wise's reports were investigated and indeed acted upon, Schaper's reports of discrimination went uninvestigated and never acted upon. Defendant's disparate enforcement of its policies in favor of younger employees and against older employees demonstrate its discriminatory intent against older individuals. Therefore, Schaper plausibly alleged the *prima facie* elements of her ADEA claim discrimination claim and this Court should deny Defendant's Motion to Dismiss.

ii. **Schaper Pled Disparate Treatment Between Herself And A Similarly Situated Employee.**

Regardless of whether Schaper was replaced or not, an employee can separately show discrimination in violation of the ADEA through disparate treatment between herself and a substantially younger similarly-situated employee. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609-610, 13 S.C. 1701, 1706 (1993); *E.E.O.C. v. Baltimore County*, 747 F.3d 267, 273 (4th Cir. 2014); *see also Long v. Forsyth Cty Dept. of Social Services*, 2016 WL 7496122 at 3 (M.D.N.C. 2016)(*citing Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 135 (2000)). Evidentiary determinations regarding whether the comparators' features are sufficiently similar to constitute

10

appropriate comparisons generally should not be made [when ruling on a motion to dismiss]." *Woods*, 855 F.3d 639, 650–51.The similarly situated analysis typically occurs in the context of establishing a prima facie case of discrimination, not at the 12(b)(6) stage. *Id. citing Haywood v. Locke*, 387 Fed.Appx. 355, 358–59.

Here, Schaper has plausibly alleged discrimination by disparate treatment. Schaper has alleged a series of reports, five made by herself and two made by Wise. Each of Schaper's five complaints went unaddressed and uninvestigated. Wise made two, each of which were swiftly acted upon and each to the detriment of an older employee. Wise's reports were either recanted or factually impossible. However, Defendant took adverse action against both Edwards and Schaper as a result of these complaints. Edward and Schaper were each over forty years old, and Schaper's allegations establish that she was over sixty at the time of the report against her. Wise, being in her twenties to thirties, is at least two decades younger than Schaper. The fact that Schaper and Wise hold different job titles is of no consequence because Defendant's anti-discrimination policies apply equally to both Schaper and Wise. Therefore, Wise is a valid comparator at the pleading stage. The disparate treatment between Schaper and Wise demonstrates discriminatory intent against older employees. Schaper alleged disparate treatment between her and a substantially younger employee, which plausibly alleged discrimination on the basis of age. Therefore, Defendant's Motion to Dismiss should be denied.

### iii. Defendant Ratified The Discrimination That Schaper Suffered.

Schaper has alleged that Defendant ratified the discrimination that Schaper suffered. Cat's Paw "refers to 'one used by another to accomplish his purposes.' In the employment discrimination context, 'cat's paw' refers to a situation in which a biased subordinate, who lacks decision making power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 484

11

(10th Cir. 2006)(citations omitted). The United States Supreme Court held an employer can be held liable under cat's paw theory when "a supervisor performs an act motivated by [prohibited] animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action." *Staub v. Proctor Hospital*, 131 S.Ct. 1186, 1194 (2017). The Fourth Circuit has recognized the cat's paw theory of liability in ADEA cases. *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 290-91 (4th Cir. 2004); *Smyth-Riding v. Sciences and Engineering Services, LLC*, 699 Fed. Appx. 146 (4th Cir. 2017)(recognizing the Fourth Circuit's theory of cat's paw liability in Title VII cases post *Staub*)(unpublished).

Here, Schaper has alleged sufficient facts to demonstrate liability under a cat's paw theory of liability. Schaper has thoroughly alleged Wise's discriminatory animus. Wise's comments about "old white men" going so far as to request that Schaper not hire Edwards clearly include animus to older employees by the inclusion of the word "old" and requesting that Schaper take an adverse employment action against Edwards because of that grounds. While it also includes animus against men and animus against Caucasian individuals, that does not negate the fact that her statement is direct evidence of animus against older employees.

Wise's discriminatory animus is further alleged through her two false reports of discrimination. Wise fabricated a report against Edwards whom she perceived to be the "old white man." Wise did not fabricate reports against younger employees. Wise also fabricated a report against Schaper, complaining that Schaper retaliated against her for a report of discrimination that Schaper wasn't even aware of until after the purportedly retaliatory decision was made. Wise made repeated, intentional attempts to have Defendant's decision makers take adverse employment actions against its older employees. Defendant's failure to investigate any of its older employees'

12

complaints demonstrates its own animus and willingness to adopt whatever Wise said. Indeed, Defendant's own human resources representative told Schaper that the facts did not matter and that Wise's feelings did. Defendant did not take a serious investigation into what Schaper reported, or attempt to deal with the fact that what Wise alleged was impossible. Defendant instead rubber stamped Wise's allegations and fired Schaper as a result. Defendant did not investigate Wise's complaint by anything more than telling Schaper that it occurred and refusing to listen to Schaper's arguments to the contrary. Defendant ratified the discrimination that Schaper suffered and acted as Wise's "paw" in discriminating against older employees. Schaper has plausibly alleged that Defendant is liable for ratifying Wise's discrimination and Defendant's Motion to Dismiss should be denied.

### B. Schaper Has Sufficiently Pled Her ADEA Retaliation Claim.

Schaper's ADEA retaliation claims may also be processed under the McDonnell Douglas burden shifting framework. *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015). To establish a prima facie case, Schaper must present evidence that: (1) "that she engaged in protected activity," (2) "that [her employer] took adverse action against her," and (3) "that a causal relationship existed between the protected activity and the adverse employment activity. *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). Here as well, *McDonnell Douglas* does not require a plaintiff to provide direct evidence of discrimination absent temporal proximity. *See United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711 n.3, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). The elements should remain flexible and be viewed on a case-by-case basis. *McDonnell Douglas*, 411 U.S. 792, 802 n. 13. Establishing a prima facie case is not meant to be onerous. *Burdine*, 450 U.S. 248, 253.

Where there is "very close" temporal proximity, a plaintiff does not have to offer additional evidence to establish causation. *Clark County School Dist. v. Breeden*, 532 U.S. 268 (2001)

13

(*quoting O'Neil v. Ferguson Constr. Co.*, 273 F.3d 1248 (C.A.10 2001)). In the United States Court of Appeals for the Fourth Circuit, courts may also look to the intervening period between a protected activity and an adverse action for other evidence of retaliatory animus. *Barbour v. Garland*, 105 F.4th 579 (4th Cir. 2024)(*citing Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007).

The Fourth Circuit has held that as far as four months between the protected activity and the adverse action is sufficient to state a claim at the *prima facia* stage. *Carter v. Ball*, 33 F.3d 450 (4th Cir. 1994); *see Thomas v. City of Annapolis*, No. 18-2148 (4th Cir. Mar 12, 2021); *Strothers v. City of Laurel*, 895 F.3d 317 (4th Cir. 2018) (citing *Carter*, 33 F.3d 450); *King v. Rumsfeld*, 328 F.3d 145,151 n.5 (4th Cir. 2003) (two and a half months). Even at the summary judgment stage, a one-and-one-half-month period between protected activity and adverse action has been held to establish causation on its own. *O'Neil,* 273 F.3d at 1253 (*citing Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir. 1999)). However, the Fourth Circuit has held that after two months, the inference of causation from temporal proximity is significantly weakened. *Horne v. Reznick Fedder & Silverman*, 154 F.App'x 361,364 (4th Cir. 2005) (quoting *King*, 328 F.3d).

Here, Schaper pled that she engaged in protected activity. On no less than five occasions, Schaper complained about age discrimination or opposed age discrimination to herself or another employee. On each occasion Schaper explicitly raised the issue of age discrimination and opposed said discrimination occurring in the workplace. Schaper engaged in protected activity.

Schaper pled that she suffered from an adverse action. Defendant terminated Schaper's employment. Termination is an adverse action. Schaper suffered from an adverse action.

Schaper pled that there is a plausible causal connection between her third, fourth, and fifth reports of discrimination based on temporal proximity alone. Schaper's Fifth Report of

14

Discrimination and Schaper's Fourth Report of Discrimination occurred <u>one day</u> before Defendant terminated her employment. One day difference between Schaper's protected activity and her termination strongly indicates discriminatory intent at the pleading stage under binding Fourth Circuit precedent. One day is less than two months, and therefore Schaper has pled sufficient causal connection between her fourth and fifth reports of discrimination and her termination.

Schaper's Third Report of Discrimination also plausibly pleads a cause of action based on temporal proximity alone. Schaper's Third Report of Discrimination occurred at the end of September and Schaper's termination occurred at the beginning of December. There are approximately three months between the two events, indicating a causal connection based on temporal proximity because of how close in time the two occurred. However, Schaper does not rely on temporal proximity alone for Schaper's Third Report of Discrimination, Second Report of Discrimination, or First Report of Discrimination. In each case, Schaper's retaliation claims are bolstered by her allegations of discriminatory treatment between how her reports of discrimination were treated, and how Wise's reports of discrimination were treated. At each step along the way, Defendant did not investigate or lend any credence to Schaper's complaints. Instead, Defendant's adamant refusal to take action against Wise, investigate Schaper's complaints, or to take action to prevent further discrimination against its elderly employees despite Schaper's complaints over the course of 2023 demonstrates Defendant's discriminatory intent. In each instance, Defendant ratified its employee's discriminatory conduct by its failure to act despite being on notice of new discriminatory acts throughout the year. Schaper has plausibly pled the causation element of her retaliation by pleading a series of discriminatory actions taken against her that were then ratified by Defendant. Therefore, Defendant's Motion to Dismiss should be denied.

### C. Defendant's Pretextual Reasons for Terminating Schaper's Employment Are Not So Obviously and Irrefutably Sound That It Renders Schaper's Claim of Pretext Implausible.

In holding that a defendant's purported reason for termination should not be held against a plaintiff in *Woods*, the Fourth Circuit also advised courts not to prematurely apply a defendant's proffered reason for termination to defeat a prospective plaintiff's claims at the pleading stage. Reproduced here: "Whether the [defendant]'s nondiscriminatory explanation . . . is in fact pretext is a question to be analyzed under the long-familiar shifting burdens regime of *McDonnell Douglas* . . . and not under Rule 12(b)(6)." *Woods*, 855 F.3d 639, 649. However, a court must still be satisfied that "the [Defendant's] explanation for [the discriminatory action] does not render [plaintiff's] allegations implausible." *Id*. The question is not whether there are more likely explanations . . . but whether the [defendant's] impliedly proffered reason . . . is so obviously and irrefutably sound and unambiguously nondiscriminatory and non-pretextual explanation that it renders [plaintiff's] claim of pretext implausible. *Id.* (citing *Houck*, 791 F.3d 473, 484 (criticizing substitution of a probability standard for plausibility standard)).

Here, Defendant purportedly terminated her on the basis of her retaliation against Wise for reporting discrimination. For one, this is a purely *factual* argument – not a legal question for this Court to decide on a Rule 12 motion to dismiss. Two, it involves a *disputed* factual issue. Indeed, Schaper alleged that she had no knowledge of Wise's report at the time that she made the decision to not promote Wise. Schaper could not retaliate against something that she had no knowledge of at the time that she made the decision. Schaper brought the fact that she was unaware of Wise's report at the time the accused retaliation occurred to Defendant's attention. Instead of re-evaluating its position, Defendant terminated Schaper's employment. Schaper's Amended Complaint alleges Defendant's pretextual reason for terminating her and explains how it is pretext by alleging the relevant facts. Defendant's pretextual reason for terminating Schaper is not so obviously and

irrefutably sound such that Schaper's allegations are implausible. Therefore, this Court should deny Defendant's Motion to Dismiss in its entirety.

## V. CONCLUSION

For the foregoing reasons, Plaintiff Theresa Schaper respectfully requests that this Honorable Court deny Defendant's Motion to Dismiss in its entirety.

                Respectfully submitted,

                */s/ Evan Gungor*
                Evan Gungor (60902)
                **SPITZ, THE EMPLOYEE'S LAW FIRM**
                5540 Centerview Drive
                Suite 200B
                Raleigh, NC 27606
                Phone: (216) 291-4744
                Fax: (216) 291-5744
                evan.gungor@spitzlawfirm.com

                *Attorney for Plaintiff Theresa Schaper*

**<u>CERTIFICATE OF SERVICE</u>**

      The undersigned hereby certifies that on June 13, 2025 a copy of the foregoing was served via the Court's Online Filing System to all parties.

*/s/ Evan G. Gungor, Esq.*
Evan G. Gungor, Esq. (60902)
**SPITZ, THE EMPLOYEE'S LAW FIRM**

# CERTIFICATE OF WORD COUNT

The undersigned counsel of record for Theresa Schaper hereby certifies that the accompanying brief complies with Local Rule 7.3(d)(1). By relying on the word count feature of Microsoft Word used in preparation of the brief, I certified that this brief contains less than 6,250 words, excluding the caption and signature blocks but including footnotes.

*/s/ Evan G. Gungor, Esq.*
Evan G. Gungor, Esq. (60902)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
